***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence. The Full Commission adopts the Opinion and Award of Deputy Commissioner Gillen with minor modifications.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Commission has jurisdiction of the parties and the subject matter. *Page 2 
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. This case is subject to the North Carolina Workers' Compensation Act.
4. An employment relationship existed between defendant-employer and plaintiff. American Home Assurance was the insurer on the risk on 8 November 2007.
5. At the hearing before the deputy commissioner the parties notified the deputy commissioner orally that they had reached an agreement that plaintiff's average weekly wage is $490.00 for the purposes of this claim.
 ***********
The following were entered into evidence as:
 STIPULATED EXHIBITS a. The Pretrial Agreement, marked as stipulated exhibit 1.
 b. A collection of documents including the Industrial Commission forms filed in this matter, plaintiff's medical records, and the parties' discovery responses, collectively paginated 1-151 and marked as stipulated exhibit 2.
 c. The first five minutes of video on a DVD marked as stipulated exhibit 3.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff has worked for defendant-employer on separate occasions. Her most recent period of employment began in mid-2006, when plaintiff was employed to do final finishing and rough cleaning. The tasks involved in this employment entailed general cleaning *Page 3 
of newly constructed homes, including the cleaning of countertops, sinks, and wet areas as well as caulking tile in bathrooms and kitchens.
2. In September 2007, plaintiff's job duties changed to the extent that she was primarily given tasks involving caulking using a caulking gun. Plaintiff held the caulking gun in her right hand and operated it by squeezing the trigger with her fingers. Subsequent to this duty-change plaintiff used a caulking gun repeatedly throughout her shifts for defendant-employer.
3. Shortly after this change in her job duties plaintiff began to experience numbness and pain in her right hand and wrist. These problems continued, and in November 2007 they became significant enough that plaintiff sought medical treatment.
4. On 15 November 2007 plaintiff was treated by Dr. Joseph Zucker at Albemarle Orthopedics Sports Medicine in Albemarle, North Carolina. In the medical note generated by this visit, Dr. Zucker diagnosed plaintiff with right carpal tunnel syndrome. Dr. Zucker subsequently treated plaintiff for her condition. Plaintiff underwent right carpal tunnel release surgery performed by Dr. Zucker on 14 December 2007.
5. As a result of her carpal tunnel syndrome and consequent surgery, Dr. Zucker took plaintiff out of work from 14 December 2007 through 7 January 2008 and from 17 January 2008 through 24 January 2008.
6. Dr. Zucker opined that plaintiff's job with defendant-employer placed plaintiff at an increased risk to develop carpal tunnel syndrome compared to members of the general public not so employed. Dr. Zucker further opined that plaintiff's job with defendant-employer was a significant contributing factor in the development of her carpal tunnel syndrome.
7. Dr. Steven Sanford performed a records review of plaintiff's material. He believed that plaintiff's job with defendant-employer did not place her at an increased risk of *Page 4 
developing carpal tunnel syndrome and that her job with defendant-employer did not cause her carpal tunnel syndrome.
8. Having considered the testimony of Dr. Zucker and Dr. Sanford, taken with their expertise and relative treatment histories of plaintiff, the undersigned give greater weight to the testimony and expert opinions of Dr. Zucker.
9. Plaintiff's repetitive duties working for defendant-employer placed her at increased risk of developing carpal tunnel syndrome as compared to the general pubic not so employed, and plaintiff's repetitive duties working for defendant-employer caused her carpal tunnel syndrome.
10. Given the credible medical and vocational evidence of record, and as a result of her compensable occupational disease, plaintiff was unable to earn any wages in any employment from 14 December 2007 through 7 January 2008 and from 17 January 2008 through 24 January 2008.
11. On 4 February 2008 Dr. Zucker released plaintiff to return to work and assigned plaintiff a 10% permanent partial disability rating to her right hand as a result of her carpal tunnel syndrome and consequent surgery.
12. The medical treatment provided thus far has been reasonably necessary to effect a cure or give relief from plaintiff's carpal tunnel syndrome.
13. Plaintiff's average weekly wage of $490.00 yields a weekly compensation rate of $326.68.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following: *Page 5 
 CONCLUSIONS OF LAW
1. In workers' compensation cases, plaintiff has the burden of proving every element of compensability. As part of this burden, plaintiff must present convincing evidence establishing these elements, including, in this case, expert medical testimony. Holley v. ACTS, Inc., 357 N.C. 228,234, 581 S.E.2d 750, 754 (2003); Harvey v. Raleigh Police Department,96 N.C. App. 28, 35, 384. S.E.2d 549, 553, disc. rev. denied,325 N.C. 706, 388 S.E.2d 454 (1989).
2. In order for an occupational disease to be compensable under N.C. Gen. Stat. § 97-53(13), plaintiff must prove that the disease is characteristic of individuals engaged in the particular trade or occupation in which the plaintiff was engaged, that the disease is not an ordinary disease of life to which the public is equally exposed, and that there exists a causal relationship between the disease and the plaintiff's employment. N.C. Gen. Stat. § 97-53(13); Rutledge v. TutlexCorp., 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983); Fann v. BurlingtonIndust., 59 N.C. App. 512, 296 S.E.2d 819 (1982); Booker v. Duke MedicalCenter, 297 N.C. 458, 256 S.E.2d 189 (1979).
3. Plaintiff has proven by the greater weight of the evidence that the repetitive tasks required by her employment with defendant-employer placed her at greater risk than the general public of developing carpal tunnel syndrome. N.C. Gen. Stat. § 97-53(13); Rutledge v. TutlexCorp., 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983); Booker v. DukeMedical Center, 297 N.C. 458, 256 S.E.2d 189 (1979).
4. Plaintiff has proven by the greater weight of the evidence that the repetitive tasks required by her employment with defendant-employer caused her to develop carpal tunnel syndrome. N.C. Gen. Stat. § 97-53(13);Rutledge v. Tutlex Corp., 308 N.C. 85, 93, *Page 6 301 S.E.2d 359, 365 (1983); Fann v. Burlington Indust., 59 N.C.App. 512,296 S.E.2d 819 (1982); Booker v. Duke Medical Center, 297 N.C. 458,256 S.E.2d 189 (1979).
5. Given the credible medical and vocational evidence of record, and as a result of her compensable occupational disease, plaintiff was temporarily totally disabled and is entitled to compensation at the rate of $326.68 per week from 14 December 2007 through 7 January 2008 and from 17 January 2008 through 24 January 2008. N.C. Gen. Stat. § 97-29;Russell v. Lowes Prod. Distribution, 108 N.C. App. 762 (1993).
6. As a result of her compensable injury, plaintiff has a ten percent (10%) permanent partial disability of her right hand, for which plaintiff is entitled to compensation at the rate of $326.68 per week for a period of 20 weeks. N.C. Gen. Stat. § 97-31(12).
7. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to have defendants provide all medical treatment, incurred or to be incurred, necessitated by the compensable occupational disease. N.C. Gen. Stat. §§ 97-25; 97-25.1.
8. As defendants appealed this matter to the Full Commission and Full Commission has concluded that plaintiff is entitled to an award of benefits, Counsel for plaintiff is entitled to an attorney fee based upon hours spent by plaintiff's counsel on the appeal of this matter to the Full Commission as set forth by affidavit. N.C. Gen. Stat. § 97-88.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendants shall pay plaintiff, subject to the attorney's fee approved below, temporary total disability compensation at a rate of $326.68 per week from 14 December 2007 *Page 7 
through 7 January 2008 and from 17 January 2008 through 24 January 2008. Those payments that have accrued shall be paid in a lump sum, subject to the attorney's fee approved below.
2. For the ten percent (10%) permanent partial disability to her right hand, defendants shall pay plaintiff compensation at the rate of $326.68 per week for a period of 20 weeks.
3. Defendants shall pay all of plaintiff's medical expenses incurred or to be incurred as a result of the compensable occupational disease, subject to the provisions of N.C. Gen. Stat. § 97-25.1.
4. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under paragraphs one and two of this Award is approved for and shall be paid to plaintiff's counsel.
5. Plaintiff's counsel is hereby ordered to file within 15 days from receipt of this Opinion and Award an affidavit of hours spent prosecuting plaintiff's claim on appeal before the Full Commission.
6. Defendants shall pay the costs.
This the 29th day of May 2009.
S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG *Page 8 
CHAIR
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 1